IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

TIMOTHY W. CARTER,

            Plaintiff,

v.                          //    CIVIL ACTION NO. 1:14CV70
                                  (Judge Keeley)

NATIONAL CITY MORTGAGE, INC.,
now known as PNC Mortgage, Inc.,

            Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS [DKT. NO. 22], AND DISMISSING WITH PREJUDICE COUNTS I AND II

Pending before the Court is the motion for judgment on the pleadings (dkt. no. 22) filed by the defendant, National City Mortgage, Inc. n/k/a PNC Mortgage, Inc. ("PNC"). For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** PNC's motion.

### I. FACTUAL BACKGROUND

The following facts are viewed in the light most favorable to the non-movant. This case arises out of dealings between PNC, a loan service provider, and the plaintiff, Timothy W. Carter ("Carter"), who, in 2009, borrowed $186,631 to purchase a home in Martinsburg, West Virginia. Carter alleges that, after he was laid off and was unable to make payments on the loan, PNC "stonewalled" his request for loss mitigation alternatives to foreclosure. He

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS,
AND DISMISSING WITH PREJUDICE COUNTS I AND II**

contends that PNC's misconduct during the pendency of his request increased his arrears to an unaffordable level.

## A.  PNC's Alleged Misconduct

In 2009, Carter, a construction worker, applied for a loan through the Single Family Housing Guaranteed Loan Program ("SFHGLP") administered by the United States Department of Agriculture ("USDA").  The USDA provides a 90% loan note guarantee for lenders who participate in the SFHGLP.  Carter obtained a $186,631 loan through Shenandoah Mortgage, LLC ("Shenandoah"), which immediately transferred the servicing rights on the loan to PNC.  Apparently, Shenandoah bundled Carter's loan with others into a mortgage-backed security, which Carter alleges is now held by GNMA I Pool Processing.[1]

Carter and his wife made timely and complete payments on the loan for more than two years until 2011, when Carter was laid off by his construction company.  Because of a delay in his receipt of unemployment benefits, Carter fell two months behind in his mortgage payments.  After he began receiving his benefits, he resumed making payments and contacted PNC to obtain a plan that

---

[1] Despite Carter's allegation, it is worth noting that "Ginnie Mae does not buy or sell loans." See http://ginniemae.gov/pages/default.aspx.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS,
AND DISMISSING WITH PREJUDICE COUNTS I AND II**

would bring his account current.[2]  PNC told Carter to submit documentation of his finances to be evaluated for loss mitigation alternatives to foreclosure.  Importantly, PNC further advised him not to make any additional payments until it provided him with an alternative to foreclosure, such as a forbearance agreement, repayment plan, or a loan modification.

Between May 2013 and early 2014, PNC made multiple requests for Carter's financial documentation, which he provided each time it was requested.  During the same period, PNC also instructed Carter on multiple occasions not to make additional payments while it processed his request for a loss mitigation alternative to foreclosure.

In August 2013, Carter submitted a new request to PNC, advising that he was once again employed and no longer relying on unemployment benefits.  PNC acknowledged receipt of his new request, but told him that he had failed to submit the necessary documentation. Carter contends that he, in fact, had submitted the required paperwork.  Nevertheless, in September 2013, he re-submitted all the requested documentation, following which, on

---

[2] The complaint does not allege when Carter first contacted PNC about foreclosure alternatives.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS,
AND DISMISSING WITH PREJUDICE COUNTS I AND II**

October 28, 2013, PNC denied his request for any loss mitigation alternatives to foreclosure.

**B.   Bankruptcy and Foreclosure**

On May 14, 2013, Carter and his wife filed a petition for bankruptcy under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. § 701, <u>et seq.</u>  According to his statement of financial affairs attached to his petition, he owed $175,000 on the mortgage loan at the time he filed for bankruptcy.  Of significance to this case, Carter did not list any contingent claims against PNC on his schedule of assets; however, he did assert his intention to retain his house while making regular payments on the loan.

On August 27, 2013, the Honorable Patrick M. Flatley, United States Bankruptcy Judge, granted Carter a discharge pursuant to 11 U.S.C. § 727, which automatically stayed any foreclosure by PNC on Carter's home.   <u>See</u> 11 U.S.C. § 362(a).   On January 16, 2014, however, the parties to the bankruptcy proceeding signed –- and the bankruptcy court entered –- an agreed order granting relief from the automatic stay of the foreclosure proceedings.   The order stated, in relevant part, that "[Carter] has indicated an intent to surrender the real property with an address of 5 Pochards Court, Martinsburg, West Virginia."

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, AND DISMISSING WITH PREJUDICE COUNTS I AND II**

PNC scheduled a foreclosure sale of Carter's home for March 18, 2014, but canceled it when Carter filed this lawsuit the day before the scheduled sale. Then, on July 1, 2014, Carter petitioned the bankruptcy court to reopen his bankruptcy proceeding. With no objection from PNC, Judge Flatley granted Carter's petition.

## II. PROCEDURAL BACKGROUND

On March 17, 2014, Carter filed a complaint in the Circuit Court of Harrison County, West Virginia, seeking damages and an injunction to prevent foreclosure. Count I asserts a violation of the West Virginia Consumer Credit and Protection Act ("WVCCPA"), W. Va. Code § 46A-1-101, et seq., specifically §§ 46A-2-127 and 46A-2-128, prohibiting the use of "fraudulent, deceptive or misleading representation[s] or means to collect or attempt to collect claims or to obtain information concerning consumers," as well as "unfair or unconscionable means to collect or attempt to collect any claim." Count II alleges negligence arising from a "special relationship" between PNC, the loan servicer, and Carter, the obligor on the loan note. Count III alleges that PNC tortiously interfered with the contract between Carter and the loan holder. Count IV asserts estoppel to prevent PNC from foreclosing on

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS,
AND DISMISSING WITH PREJUDICE COUNTS I AND II**

Carter's home.  Count V alleges that PNC committed fraud by instructing Carter not to make payments while intending to foreclose on the home.  Finally, Count VI alleges an alternative claim for breach of contract that Carter would pursue only if discovery reveals that PNC is the loan holder and thus a party to the contract.

PNC removed Carter's complaint to this Court on November 18, 2014.  Although it filed a motion to change venue, PNC failed to file an answer to the complaint.  Carter moved to remand the case to state court.  After the Court denied both of these motions, PNC filed a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6). In response, Carter noted that PNC's responsive pleading was filed out of time, but acknowledged his own failure to file a notice of default.  At oral argument, the parties agreed that PNC could answer Carter's complaint, and the Court then converted PNC's motion to dismiss to a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c).

In its motion, PNC contends as follows: (1) that Carter cannot bring a claim under the WVCCPA because, as a result of his bankruptcy discharge, he is no longer a "consumer"; (2) that Carter's negligence claim fails as a matter of law because PNC owed

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS,
AND DISMISSING WITH PREJUDICE COUNTS I AND II**

him no cognizable duty; (3) that Carter's fraud claim fails because
it is not pled with the requisite particularity; (4) that Carter is
judicially estopped from bringing any claims against PNC because,
in his bankruptcy proceeding, he failed to list such claims on his
schedule of assets, and ultimately surrendered the home to PNC; and
(5) that Carter lacks standing to bring any claims against PNC
because such claims pre-date his bankruptcy petition, and therefore
now belong to the bankruptcy estate.  The motion is fully briefed
and ripe for review.

### III. STANDARD OF REVIEW

Rule 12(c) provides that, "[a]fter the pleadings are closed –-
but early enough not to delay trial –- a party may move for
judgment on the pleadings."  The standard of review for Rule 12(c)
motions is the same standard applied to Rule 12(b)(6) motions to
dismiss.  See Independence News, Inc. v. City of Charlotte, 568
F.3d 148, 154 (4th Cir. 2009).  The only difference between a Rule
12(c) motion and a Rule 12(b)(6) motion is timing.  See Burbach
Broad. Co. v. Elkins Radio Corp., 278 F.3d 401, 405-06 (4th Cir.
2002) ("Because Elkins' answer had been filed, the pleadings were
closed at the time of the motion.  Thus, we construe the motion as
one for judgment on the pleadings.  However, the distinction is one

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS,
AND DISMISSING WITH PREJUDICE COUNTS I AND II**

without a difference, as we . . . apply[] the same standard for Rule 12(c) motions as for motions made pursuant to Rule 12(b)(6).").

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). In reviewing the sufficiency of a complaint, a district court "'must accept as true all of the factual allegations contained in the complaint.'" Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)).

Although a complaint does not need to contain detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Indeed, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS,
AND DISMISSING WITH PREJUDICE COUNTS I AND II**

claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

## IV. DISCUSSION

### A.   Judicial Estoppel

To defeat the entirety of Carter's complaint, PNC contends that the doctrine of judicial estoppel bars his claims because he has taken inconsistent positions in two respects. First, after representing to the bankruptcy court that he had no claims against PNC by failing to list any on his schedule of assets, he has since asserted those claims in his complaint. Second, after representing to the bankruptcy court that he intended to surrender his home to PNC, he now seeks to enjoin PNC from foreclosing on the home.

Carter's response emphasizes that PNC's alleged misconduct occurred after he filed his bankruptcy petition, and thus his claims were properly excluded from his schedule of assets and not required to be added by way of supplement. See Fed. R. Bankr. P. 1007(h); 11 U.S.C. § 541(a)(5). Carter also contends that his current intent to retain his home and make payments is not inconsistent because he stated as much in his bankruptcy petition. Finally, since his bankruptcy proceeding has been reopened, Carter intends to "include post-petition claims and correct the

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS,
AND DISMISSING WITH PREJUDICE COUNTS I AND II**

unsupported finding [of Carter's intent to surrender the house to PNC] in the Agreed Order lifting the automatic stay." (Dkt. No. 25 at 17).

Based on Carter's intent to strike from the bankruptcy record the allegedly unfounded statement regarding his surrender of the home, PNC cannot prevail on its judicial estoppel argument as to that representation.[3]  Furthermore, judicial estoppel does not apply to any post-petition claims alleged in the complaint because Carter's representations in the bankruptcy proceeding did not involve any post-petition claims.  To the extent Carter alleges misconduct by PNC prior to the filing of his bankruptcy petition, however, he is estopped from asserting such claims in this case. Not only did he fail to list such claims on his schedule of assets at the time of filing, but he also failed to include them by way of supplement.  Most importantly, Carter has represented to this Court that "his allegations arise out of post-petition conduct."  Id. at 16.

---

[3] If, after discovery has closed, Carter's representation remains in the bankruptcy record, PNC may renew this argument on summary judgment.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS,
AND DISMISSING WITH PREJUDICE COUNTS I AND II**

## B.   Standing

PNC also contends that Carter lacks standing to assert any claims against it because such claims belong to the bankruptcy estate.  Indeed, Carter has reopened his bankruptcy proceeding, which makes it likely that his claims are listed on the new schedule of assets, and therefore would belong to the bankruptcy estate.  However, because the Court lacks any verification of that, for now, the claims remain post-petition assets not subject to the bankruptcy proceeding initiated on May 14, 2013.  See In re Andrews, 80 F.3d 906, 910 (4th Cir. 1996) (explaining that 11 U.S.C. § 541(a) "allows the debtor to exclude from his estate any [assets] he might earn after the date of petition").

Moreover, even if the claims are included in the new schedule of assets, the parties do not anticipate that any recovery will exceed Carter's bankruptcy exemptions.  In such circumstances, the law generally considers legal claims to remain an asset of the debtor-plaintiff rather than of the bankruptcy estate.  See, e.g., In re Combs, A.P. No. 03-5043 (Bankr. S.D.W. Va. Oct. 20, 2004) (order denying motions to dismiss).  PNC concedes that this issue cannot be resolved until it is known whether the estate will

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS,
AND DISMISSING WITH PREJUDICE COUNTS I AND II**

prosecute the claims. (Dkt. No. 27 at 12). PNC's standing argument, therefore, is better suited for summary judgment.

## C.    WVCCPA

PNC argues that Carter's bankruptcy discharge foreclosed his opportunity to bring a claim under the WVCCPA inasmuch as it removed him from the class of individuals entitled to statutory standing. In his response, Carter argues that he possessed statutory standing at the time of PNC's alleged misconduct, and therefore is entitled to sue under the WVCCPA within the prescribed one-year limitations period.[4]

The WVCCPA provides a cause of action to a "consumer" to recover damages for a creditor's violations. § 46A-5-101(1). A "consumer" is defined as "any natural person obligated or allegedly obligated to pay any debt." § 46A-2-122(a). On August 27, 2013, the bankruptcy court discharged Carter's obligation to pay the debt owed on his mortgage loan. Thus, when Carter filed suit on March 17, 2014, he was not a consumer relative to PNC under the

---

[4] Pursuant to § 46A-5-101(1), "no action pursuant to this subsection may be brought more than one year after the due date of the last scheduled payment of the agreement."

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS,
AND DISMISSING WITH PREJUDICE COUNTS I AND II**

WVCCPA.[5]  Carter, however, contends that he "still has up to one
year after the date of discharge to bring his claims arising out of
conduct that occurred when he was a so-called consumer." (Dkt. No.
25 at 9).

Another court within this district has discussed the issue of
statutory standing under the WVCCPA.  In Fabian v. Home Loan Ctr.,
Inc., No. 5:14CV42, 2014 WL 1648289, at *5-6 (N.D.W. Va. Apr. 24,
2014) (Bailey, C.J.), the plaintiffs, who had borrowed money for a
mortgage, filed for bankruptcy and received a discharge of their
debt in 2010.  In 2013, they filed a claim under the WVCCPA against
the loan originator and the loan holder for violations that
allegedly occurred prior to their bankruptcy discharge.  The loan
originator moved to dismiss the claim, arguing that, because the
"plaintiffs' personal obligation to repay their [mortgage loan]
debt was discharged in bankruptcy, plaintiffs are excluded from the
[WVCCPA's] definition of 'consumer,' depriving them of standing
under the [WVCCPA's] terms." Fabian, 2014 WL 1648289 at *5.

The court agreed and concluded that, once the plaintiffs
received a bankruptcy discharge for their mortgage loan debt, they

---

[5] Notably, the parties have not addressed the effect, if any, of the
reopening of Carter's bankruptcy proceeding on his statutory standing
under the WVCCPA.

no longer were "consumers" under the WVCCPA, and therefore lacked standing to bring a claim under the Act. Chief Judge Bailey explained: "Plaintiffs have failed to demonstrate that they are allegedly obligated to pay within the meaning of the Act. Consequently, plaintiffs lack standing to bring their WVCCPA unconscionability claim, as they are not 'consumers' within the meaning of § 46A-2-122(a)." Id. at *6.

Notwithstanding the holding in Fabian, Carter presents an argument that was not addressed in that case. He seizes on the statute of limitations, which permits the bringing of a cause of action within one year after "the due date of the last scheduled payment of the agreement," § 46A-5-101(1), and urges that his bankruptcy discharge is an analogous event. He contends that, so long as his complaint was filed within one year of receiving a bankruptcy discharge, standing is not an issue.

The Court is unpersuaded by the argument that the passing of the date of the last scheduled payment on a loan and a bankruptcy discharge are analogous events. The latter relieves the debtor of any obligation to make additional payments on the loan, and thereby removes him from the class of persons entitled to sue. The former does not relieve the debtor of any obligation; its only function is

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS,
AND DISMISSING WITH PREJUDICE COUNTS I AND II**

to trigger the limitations period.  Therefore, Carter's argument is unavailing; his bankruptcy discharge foreclosed the possibility of his filing suit against PNC under the WVCCPA.

**D.   Negligence**

Count II of Carter's complaint alleges that PNC acted negligently by "instructing [Carter] not to make payments, advising [Carter] that it would provide him with assistance to keep his home, and then instead allowing arrears to accrue for years and ultimately denying [Carter] for assistance without adequately and properly considering [Carter] for loss mitigation alternatives to foreclosure, and pursuing foreclosure."  (Dkt. No. 1-1 at 8).  As a result, Carter alleges that he "accrued arrears that made it impossible for [him] to reinstate his loan."  Id. at 9.  In its motion, PNC contends that it owed no cognizable duty to Carter, and thus cannot be liable under a negligence theory.

"In order to prove actionable negligence there must be shown a duty on the part of the person charged with negligence . . . ." Syl. Pt. 2, Atkinson v. Harman, 158 S.E.2d 169, 171 (W. Va. 1967). The law provides many sources from which a duty may arise, for example, a statute, the common law, or public policy.  See generally 65 C.J.S. Negligence § 35 (2014).  Besides these

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS,
AND DISMISSING WITH PREJUDICE COUNTS I AND II**

traditional sources, West Virginia law also recognizes that a duty in tort can arise from a "special relationship" between the parties. See O'Brien v. Quicken Loans, Inc., Nos. 2:12CV5138, 2:12CV5262, 2013 WL 2319248, at *10 (S.D.W. Va. May 28, 2013) (citing Glascock v. City Nat'l Bank of W. Va., 576 S.E.2d 540, 545 (W. Va. 2002)); see also White v. AAMG Constr. Lending Ctr., 700 S.E.2d 791, 798 (W. Va. 2010) ("[O]ur law allows a negligence claim for purely economic losses when then [sic] there is evidence of a 'special relationship' between the plaintiff and the defendant."). "Such special relationship . . . can arise from contractual privity or other close nexus." Aikens v. Debow, 541 S.E.2d 576, 589 (W. Va. 2000).

Here, Carter alleges that the source of PNC's duty was a "special relationship" between the parties. (Dkt. No. 1-1 at 8) ("Under the circumstances alleged, in which [PNC] engaged in significant communications and activities with [Carter] and the loan thereby creating a special relationship with [Carter], [PNC] owed a duty to [Carter] . . . .") . Nevertheless, he concedes that "there's not a contract" and that "plaintiff and defendant are not in privy [sic]." (Dkt. No. 34 at 42). Thus, the special relationship alleged in the complaint only could have arisen from

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS,
AND DISMISSING WITH PREJUDICE COUNTS I AND II**

a "close nexus." See Aikens, 541 S.E.2d at 590 (internal quotation marks omitted) ("'In the absence of contractual privity, its equivalent has been found and a tort duty imposed when a sufficiently close nexus or relationship is shown.'") (quoting L&P Converters, Inc. v. Alling & Cory Co., 642 A.2d 264, 267 (Md. 1994)).

The fact that West Virginia's highest court relied on Maryland law in crafting its "special relationship" test in Aikens is noteworthy in light of the Fourth Circuit's recent application of the Maryland test in Spaulding v. Wells Fargo Bank, N.A., 714 F.3d 769, 778-80 (4th Cir. 2013).  There, the plaintiffs had alleged that their loan servicer, Wells Fargo, "owed them a duty to process their loan modification application." Id. at 779. The district court had dismissed the negligence claims, finding that "Wells Fargo did not owe Plaintiffs a tort duty." Id. at 776.  On appeal, the Fourth Circuit recognized that "[b]anks typically do not have a fiduciary duty to their customers."[6] Id. at 778.  It noted, however, that Maryland law, like West Virginia law, recognizes an exception when the plaintiff establishes an "intimate nexus"

_____

[6] In its analysis, the Fourth Circuit did not distinguish between loan servicers and loan originators or loan holders.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS,
AND DISMISSING WITH PREJUDICE COUNTS I AND II**

between the parties. Id. at 779 (citing Jacques v. First Nat'l Bank of Md., 515 A.2d 756, 759 (Md. 1986)). In Maryland, the intimate nexus test is satisfied by "contractual privity or its equivalent." Id. (citing Jacques, 515 A.2d at 759-60).

After determining that the plaintiffs lacked contractual privity with Wells Fargo, the Fourth Circuit evaluated whether there were other "special circumstances" that gave rise to a quasi-contractual relationship. Id. It explained that the Maryland Court of Appeals has recognized the existence of special circumstances where a borrower paid a loan application processing fee to a lender, the lender made specific promises to the borrower, and the lender was aware of particularized circumstances concerning the borrower's loan application. Id. at 780 (citing Jacques, 515 A.2d at 756-62). Contrasting those facts to the facts before it, the court determined that "[t]he special circumstances in Jacques . . . are not present here." Id. at 779-80. Ultimately, it held that "there was no express or implied contract, and therefore, as the district court concluded, no tort duty could arise as a matter of law." Id.

Federal district courts in West Virginia that have analyzed the issue addressed in Spaulding have looked not to special

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS,
AND DISMISSING WITH PREJUDICE COUNTS I AND II**

circumstances giving rise to an implied contract in determining whether a tort duty existed, but rather, to whether the plaintiff alleged that the loan servicer provided services beyond those normally extant in a borrower-servicer relationship. See, e.g., McNeely v. Wells Fargo Bank, N.A., No. 2:13CV25114, 2014 WL 7005598, at *6 (S.D.W. Va. Dec. 10, 2014); Coleman v. JP Morgan Chase Bank, N.A., No. 3:14-0183, 2014 WL 1871726, at *9 (S.D.W. Va. May 8, 2014); O'Brien v. Quicken Loans, Inc., Nos. 2:12CV5138, 2:12CV5262, 2013 WL 2319248, at *10 (S.D.W. Va. May 28, 2013); Petty v. Countrywide Home Loans, Inc., No. 3:12-6677, 2013 WL 1837932, at *11 (S.D.W. Va. May 1, 2013); Ranson v. Bank of Am., N.A., No. 3:12-5616, 2013 WL 1077093, at *5 (S.D.W. Va. Mar. 14, 2013); Nowlan v. JP Morgan Chase Bank, N.A., No. 2:11CV404, 2012 WL 1029315, at *5 (S.D.W. Va. Mar. 26, 2012); Warden v. PHH Mortg. Corp., No. 3:10CV75, 2010 WL 3720128, at *9 (N.D.W. Va. Sept. 16, 2010) (citing Glascock v. City Nat'l Bank of W. Va., 576 S.E.2d 540, 545-56 (W. Va. 2002)).

Here, the only service allegedly provided by PNC was to review Carter's application for loss mitigation alternatives to foreclosure. Carter does not allege that a loan servicer's review of such applications goes beyond those services normally provided

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS,
AND DISMISSING WITH PREJUDICE COUNTS I AND II**

to borrowers.  Moreover, at least one case has concluded that allegations nearly identical to those in Carter's complaint did not give rise to a special relationship.  <u>See</u> <u>Ranson</u>, 2013 WL 1077093 at *6 ("There is nothing about these allegations that creates a 'special relationship' between the parties.").

Even if this Court were to adopt the quasi-contract analysis outlined in <u>Spaulding</u>, its conclusion would not change. There is still no close nexus between Carter and PNC.  Carter did not pay PNC any consideration to review his application, and PNC made no specific promises to Carter.

Nevertheless, at oral argument, Carter's attorney proposed an alternative source of the alleged duty, stating:

> Servicers, like defendant, are directed by the Rural Development Agency of the [USDA] to utilize foreclosure alternatives to the fullest extent possible when servicing loans that have defaulted or are in imminent danger of default.  The legal duty is that the Rural Housing Agency has directed services [sic], who are contracted out to service these claims, not through a contract between borrowers and servicers, but through a special agreement with the [USDA], to engage in extra special loss mitigation review . . . This is a special loan where the servicers who are engaged to service these loans are obligated, because they've made agreements with the [USDA] to treat borrowers differently than other borrowers.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS,
AND DISMISSING WITH PREJUDICE COUNTS I AND II**

(Dkt. No. 34 at 43). Taking these allegations as true, under the USDA's Rural Housing Service directive, PNC was obligated to conduct a heightened review of Carter's application for loss mitigation alternatives to foreclosure. The question thus is whether such a directive gives rise to a tort duty flowing between PNC and Carter.

Notably, in Spaulding, the plaintiffs contended that their negligence claim was viable because "Wells Fargo owed them a duty to process their loan modification application under [the United States Treasury Department's Home Affordable Modification Program]." 714 F.3d at 779. Although the Fourth Circuit ultimately concluded that the loan servicer owed no duty to the plaintiffs, it never specifically addressed whether the obligations imposed by the federal program provided the source of a tort duty between the servicer and the borrower.

That said, several federal district courts have squarely addressed the question and have rejected the argument for a variety of reasons. In Markle v. HSBC Mortg. Corp. (USA), 844 F. Supp. 2d 172, 184-85 (D. Mass. 2011), for example, the plaintiffs urged that "they may pursue a common-law claim of negligence for a violation of [the federal program's] implementing guidelines," and that the

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS,
AND DISMISSING WITH PREJUDICE COUNTS I AND II**

program "establishes a legal duty of care for servicers to comply with [its] guidelines." The district court rejected their argument, explaining that "[p]laintiffs do not cite any Massachusetts authority recognizing a duty of care set by [the federal program's] guidelines, the breach of which would expose servicers to liability." <u>Id.</u> at 185. The court "decline[d] the invitation to recognize in the [federal program's] guidelines a new duty of care, thus far unrecognized by Massachusetts courts." <u>Id.</u>

Other courts have rejected the same argument for the reason that obligations imposed on servicers by federal programs may give rise to a duty flowing between the servicer and the government, but not between the servicer and the borrower. <u>See, e.g.</u>, <u>Gamez v. Wells Fargo Bank, N.A.</u>, No. 4:11CV919, 2013 WL 960464, at *4 (S.D. Tex. Mar. 12, 2013) ("Although this argument provides a basis for finding obligations to the U.S. Government, it does not provide one for finding a legally actionable duty of care owed to borrowers.").

Still other courts have rejected the argument because the federal program did not provide the borrower with a private right of action, and because the borrowers were not third party beneficiaries under the federal program. <u>See, e.g.</u>, <u>Dixon v. Wells Fargo Bank, N.A.</u>, No. 12-10174, 2012 WL 4450502, at *9 (E.D. Mich.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS,
AND DISMISSING WITH PREJUDICE COUNTS I AND II**

Sept. 25, 2012) ("[O]ther than their reliance on the [federal program] contracts, of which Plaintiffs' [sic] are not intended beneficiaries, Plaintiffs have failed to suggest any duty that Wells Fargo may have owed them . . . . Accordingly, their negligence claim must be dismissed.").

These decisions demonstrate that, even if the USDA's Rural Housing Service required PNC to review Carter's application with heightened care, such a requirement does not give rise to a tort duty owed by PNC to Carter. The Court therefore concludes that Carter's negligence claim should be dismissed because he has failed to establish a duty owed to him by PNC.

**E.    Fraud**

In his fraud claim, Carter alleges that PNC "represented to [him] that non-payment was necessary to receive assistance and that [PNC] could only consider and/or [sic] [him] for loss mitigation assistance so long as [he] avoided making any payments." (Dkt. No. 1-1 at 11). He further alleges that, in reliance on PNC's representations, he "did not make payment toward the subject mortgage loan," and "had a reasonable expectation that [PNC] would appropriately review [him] for and/or provide [him] with loss

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS,
AND DISMISSING WITH PREJUDICE COUNTS I AND II**

mitigation assistance." Id. Finally, he states he "was injured by his reliance of [PNC's] representations." Id.

PNC argues that Carter has failed to plead his fraud claim with the requisite particularity. Carter rebuts this by pointing to specific allegations in his complaint that he contends satisfy the particularity requirement. PNC did not press the issue in its reply brief or at oral argument.

Rule 9(b) of the Federal Rules of Civil Procedure requires parties alleging fraud to "state with particularity the circumstances constituting fraud." "[T]he 'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure: Civil § 1297, at 590 (2d ed. 1990)). Importantly, the Fourth Circuit has instructed district courts to "hesitate" in dismissing a fraud claim under Rule 9(b) if satisfied "(1) that the defendant has been made aware of the particular circumstances for which she will have to prepare

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS,
AND DISMISSING WITH PREJUDICE COUNTS I AND II**

a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." Id.

Here, Carter has alleged that PNC's agents misrepresented to him that it was necessary to stop making payments in order to be considered for loss mitigation alternatives to foreclosure. These communications allegedly originated from PNC's place of business and occurred between May 2013 and early 2014. Clearly, PNC is on notice of the circumstances surrounding the alleged fraud, and Carter, as the purported victim of the fraud, has the communications allegedly sent by PNC. Based on this, PNC's argument that Carter's fraud claim is insufficiently pled is without merit.

## V. CONCLUSION

For the reasons discussed, the Court **GRANTS IN PART** and **DENIES IN PART** PNC's motion for judgment on the pleadings. In so doing, it **DISMISSES WITH PREJUDICE** Carter's claim under the WVCCPA (Count I) and his negligence claim (Count II). Carter may proceed on his claims for tortious interference with contract (Count III), estoppel (Count IV), and fraud (Count V). To the extent PNC has not moved to dismiss Carter's alternative claim for breach of contract (Count VI), it remains viable.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS,
AND DISMISSING WITH PREJUDICE COUNTS I AND II**

It is so **ORDERED.**

The Court directs the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: March 3, 2015.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE